**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Michael Vasquez,

            Plaintiff,

v.

Piper Sandler & Company, et al.,

            Defendants.

No. CV-22-00473-TUC-RCC

**ORDER**

      Before the Court are Defendants William Davis (Doc. 41), Frank Fairman (Doc. 42), and Nick Dodd's (Doc. 43) Motions to Dismiss ("MTD") and Defendant Piper Sandler & Company's ("Piper") Motion for Judgment on the Pleadings (Doc. 23).[1]

### I.   ORIGINAL COMPLAINT

      Plaintiff Michael Vasquez's Complaint raised Title VII and § 1981 claims against Piper for discrimination, hostile work environment, and retaliation based on race, color, and national origin. (Doc. 1.) The Complaint alleged Vasquez worked as Piper's senior vice president of public finance services in Arizona. (*Id.* ¶ 8.) Piper's managing director of public finance services, Nick Dodd, made several racially charged remarks to other individuals about Vasquez. (*Id.* ¶¶ 11–13, 15–19.) Allegedly motivated by the discriminatory conduct, Piper (1) excluded Vasquez from financial transactions, (2)

---

[1] The Court finds oral argument will not aid in the resolution of the issues raised based on the abundant briefing in the four pending motions. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(a); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court.").

denied the administrative support necessary for Vasquez's success, and (3) terminated Vasquez after he complained about the discriminatory conduct. (*Id.* ¶¶ 21–27.)

Piper filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6.) The Court granted the motion, indicating Vasquez's discrimination claim failed because he did not demonstrate that: (1) Vasquez "was qualified for and adequately performing his job"; (2) Dodd's discriminatory remarks were the but-for cause of an adverse employment action; and (3) similarly situated employees existed who were treated more favorably. (Doc. 15 at 5.)

In addition, the Court stated Vasquez's hostile work environment claim contained only "indirect statements made to third parties" with no explanation "how the discriminatory statements changed how he was treated or how the comments led to an abusive working environment." (*Id.* at 8.)

Finally, the Court noted Vasquez's retaliation claim did not include any discriminatory actions occurring between Vasquez's Amended Equal Employment Opportunity Commission Charge ("Amended EEOC Charge") and his termination nine months later; therefore, the Court reasoned, "it is a stretch to conclude there is a causal link between the two distant events." (*Id.* at 7.)

In dismissing, the Court analyzed the allegations as three separate counts, providing the elements for each. (*Id.* at 5–9.) The Court noted Plaintiff's claims were unclear and, upon amendment, he must state each intended claim in a separate count. (*Id.* at 3, n.4.)

## II.   FIRST AMENDED COMPLAINT

Vasquez's First Amended Complaint ("FAC") includes two counts against all Defendants: Count 1: "Disparate Treatment (including discriminatory harassment)," and Count 2: Retaliation—both based on race, color, and national origin. (Doc. 19 at 3–10.) However, the Court analyzes this as three claims: (1) disparate treatment, (2) harassment/hostile work environment, and (3) retaliation. Vasquez's allegations against Piper arise under Title VII and § 1981; those against individual Defendants arise under § 1981. (*Id.* at 1–3, n.1.)

1    In response, Piper filed a Motion for Judgment on the Pleadings, arguing Vasquez

2    had not exhausted his administrative remedies and had otherwise failed to state a claim.

3    (Doc. 23.) Defendants Fairman, Dodd, and Davis filed Motions to Dismiss. (Docs. 41–

4    43.) The Court addresses these motions in turn.

5    **III.    STANDARD OF REVIEW**

6        *a.  Motions to Dismiss* [2],[3]

7        A motion under 12(b)(6) must contain a "short and plain statement of the claim

8    showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does

9    not require detailed factual allegations, "it demands more than an unadorned, the

10   defendant unlawfully–harmed–me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

11   (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

12   claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550

---

[2] Defendants' Motions to Dismiss ask the Court to evaluate Vasquez's claims under the *McDonnell Douglass* burden-shifting framework, requiring a prima facie case. (*See e.g.*, Doc. 41 at 5; Doc. 42 at 5 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).) *McDonnell Douglass* is an evidentiary standard applied at summary judgment. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). A motion to dismiss requires plaintiff provide a short statement showing entitlement to relief; meaning, the allegations need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (cleaned up); *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004) (applying Rule 8 pleading standard to Title VII and § 1981 motions to dismiss).

[3] The FAC attached declarations from Phong Pham and Dawn Castro. In response to the MTDs, Vasquez also attached a supplemental declaration by Castro, Vasquez's declaration, and a January 26, 2022 email. (Exhs. C–F, Doc. 48-1.) On a motion to dismiss, a court generally may only consider the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But the Court can also consider a document included in the complaint, and "may take judicial notice of matters of public record." *Id.* at 689 (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)); *see also* Fed. R. Evid. 201. Additionally, courts may consider a document in "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document . . . ." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court will not consider Exhibits C through F. Vasquez makes no legal argument as to why Court may review them. The documents are neither part of the FAC, public records, nor incorporated by reference into the allegations of the FAC.

U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint must contain more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief [is] . . . a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "The issue [on a motion to dismiss] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* So, at this stage, a claimant's allegations need only "nudge . . . the claim across the line from conceivable to plausible." *Al-Kidd v. Ashcroft*, 580 F.3d 949, 976 (9th Cir. 2009).

If the plaintiff "fails to state a claim on which relief may be granted," the district court must dismiss. 28 U.S.C. § 1915(e)(2)(B)(ii). However, if the pleading can be remedied through the addition of facts, the claimant should be granted an opportunity to amend prior to final dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000). The Court's discretion to deny leave to amend is particularly broad where a plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).

### a. Title VII and § 1981

Title VII of the Civil Rights Act of 1964 proscribes employment discrimination based on race, color, and national origin. 42 U.S.C. § 2000e et seq. However, Title VII does not allow for individual liability. *Ortez v. Washington Cnty.*, 88 F.3d 804, 808 (9th Cir. 1996). Instead, 42 U.S.C. § 1981 allows for discrimination claims against individuals. *Flores v. City of Westminster*, 873 F.3d 739, 753 n.6 (9th Cir. 2017).

"Section 1981 prohibits discrimination in the making and enforcement of contracts by reason of race, including color or national origin differences." *Id*. "When analyzing § 1981 claims, [district courts] apply the same legal principles as those applicable in a Title VII disparate treatment case." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). However, a claim under § 1981 must "be predicated on the actor's personal

involvement." *Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1034, 1048 (D. Ariz. 2021) (quoting *Elmatboly v. Ariz. St. Univ.*, No. 2:05-CV-35180HRH, 2009 WL 10674070, at \*6 (D. Ariz. Apr. 30, 2009)). In other words, the discriminatory action must be intentional. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982). "[N]egligence does not constitute the personal involvement or affirmative link necessary to support a claim of individual liability," *Gebrekidan v. USAA Ins. Co.*, No. C13-0505JLR, 2013 WL 6512995 (W.D. Wash. Dec. 12, 2013) (citation and quotation marks omitted).

## IV.    DEFENDANT FAIRMAN'S MOTION TO DISMISS

Vasquez's FAC alleges discrimination, harassment, and retaliation against Piper's national managing director of public finance services, Frank Fairman. (Doc. 19.) The FAC claims Vasquez reported Defendant Dodd's ongoing discriminatory remarks to Fairman. (*Id.* ¶ 48.) When senior investment banking assistant Dawn Castro also informed Fairman of Dodd's derogatory comments, Fairman simply responded, "oh, that's not good."[4] (*Id.* ¶ 56.) In addition, Fairman denied Vasquez an administrative assistant, which impacted his ability "to efficiently do his job." (*Id.* ¶ 36.) Moreover, when Defendants Dodd and Davis excluded Vasquez from communications with his contacts and executed a bond deal with them "behind his back," Fairman and Davis told administrators "not to enter the transaction into Piper's financing system and to otherwise hide the transaction from Mr. Vasquez," in violation of "Piper's management and accounting rules." (*Id.* ¶¶ 30–32.) Fairman did not treat Vasquez's "non-Hispanic peers at the firm" similarly. (*Id.* ¶ 34.)

### a.  Disparate Treatment

To engage in disparate treatment, "[t]he employer simply treats some people less favorably than others because of a protected trait or characteristic." *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993.) A disparate treatment claim must plead facts

---

[4] The Court does not analyze this comment for Vasquez's claims against Fairman. "[S]tray remarks are insufficient to establish discrimination." *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990). Moreover, if anything, the comment acknowledges that Dodd's racial statements were inappropriate.

demonstrating "(1) the plaintiff belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 691 (9th Cir. 2017); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (applying standard to § 1981 claims).

The first element is undisputed. For the second, Vasquez's FAC details his history, education, and experience in public finance and in the municipal bond market. (Doc. 19 ¶¶ 22–24, 28–30.) Vasquez asserts he was successfully initiating contact with various clients for Piper, but Fairman, Dodd, and Davis's discriminatory behavior prevented him from completing deals. (*Id.* ¶¶ 31–33.) The Court finds Vasquez has sufficiently pled he was qualified for and adequately performing his job.

Third, Vasquez alleges Fairman subjected him to three adverse actions—terminating him, secretly directing staff not to enter an executed bond deal with Vasquez's contacts into the financing database, and denying him an administrative assistant. (Doc. 48 at 16.) "[A]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of . . . employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Calif. Davis, Bd. of Trustees*, 225 F.3d at 1126).

The FAC did not allege Fairman terminated Vasquez, so the Court will not impute this adverse action to Fairman.[5] (*See* Doc. 48 ¶ 61.) And, while stealing Vasquez's clients, executing bond deals, and then hiding the financial transaction could have materially affected Vasquez's compensation, there are no facts or legal authority in support, nor any explanation how these actions were adverse.

However, Vasquez has sufficiently pled one adverse action—the denial of an

---

[5] Plaintiff argues Fairman's involvement in his termination in his response to the motion to dismiss and attached exhibits. The Court must rely on the facts alleged in the FAC alone. Even if, *arguendo*, the Court considered the exhibit notifying Vasquez of his separation agreement, this does not establish Fairman terminated him. It merely shows Fairman was cc'd on the email. (*See* Doc. 48-1 at 24–25.)

assistant. *See Harrington v. George Fox Univ.*, No. 3:18-cv-00846-HZ, 2021 WL 645928, at \*15–16 (D. Or. Feb. 17, 2021) (finding providing fewer assistant coaches to plaintiff was an adverse action because it "assigns different duties to two employees in the same position"); *Davis*, 520 F.3d at 1090 ("assigning more, or more burdensome, work responsibilities, is an adverse employment action"); *Marquez v. Harper Sch. Dist. No. 66*, No. CV-09-1254-SU, 2011 WL 2462035, at \*28 (D. Or. Mar. 24, 2011) (finding "[a]ssignment of more strenuous work . . . and exclusion from important areas in the workplace" constituted adverse actions). Here, Fairman purportedly "managed the allocation and use of administrative assistants by investment bankers . . . ." (Doc. 48 at 11.) Because Fairman guaranteed—but did not provide—an assistant, Vasquez claims he "was forced to perform his administrative, clerical, and quantitative work without assistance," which "undermined Vasquez's professional success at Piper." (Doc. 19 ¶¶ 38–39.) Fairman's failure to provide an assistant could be considered adverse because it assigned more clerical duties to Vasquez than others in his position.

Fourth, the FAC baldly states that other similarly situated, non-Hispanic employees were treated differently, without explaining how. (Doc. 19 ¶ 38.) This failure does not meet the Rule 8 pleading standards. *Bastidas v. Good Samaritan Hosp. LP*, 774 F. App'x 361, 363–64 (9th Cir. May 16, 2019) (dismissing claim that other employees were similarly situated, stating "we are not required to accept as true allegations that are merely conclusory. . . .") (cleaned up); *see also Martin v. Sam's West, Inc.*, No. CV-23-01619-PHX-SMB, 2024 WL 1533471, at \*2 (D. Ariz. Apr. 9, 2024) (granting motion to dismiss because plaintiff did "not elaborate on what 'similarly situated' peers he is referring to, or which actions they took that were treated differently than his own similar actions"); *Sheets v. Winslow*, No. CV-19-08187-PCT-JJT, 2020 WL 3129249, at \*3 (D. Ariz. June 12, 2020) (dismissing second amended complaint because plaintiff "provided virtually no information to demonstrate similarity"); *Watson v. City of Henderson*, No. 2:20-cv-01761-APG-BNW, 2021 WL 4340501, at \*7 (D. Nev. Sept. 23, 2021) (granting motion to dismiss where plaintiff had not "specified the other employees' roles or other allegations that would allow [the court] to evaluate whether the roles are similar in all

material respects"). This alone cannot withstand a motion to dismiss.

But, in the absence of a similarly situated comparator, a complaint may withstand a motion to dismiss if the plaintiff shows there are "other circumstances surrounding the adverse employment action giv[ing] rise to an inference of discrimination." *Reynaga*, 847 F.3d at 691. Viewing the factual allegations in the light most favorable to Vasquez, Dodd's verbal barrage of remarks demonstrated Dodd's discriminatory motivation. Allegedly, Fairman knew of this motive and then assisted Dodd, hiding his negotiations with Vasquez's contacts and the resulting financial transactions and withholding an administrative assistant. Fairman's knowledge of Dodd's racial prejudice, and his subsequent actions helping Dodd to undermine Vasquez's success could give rise to an inference of discrimination. At the pleading stage, the Court will allow the § 1981 disparate treatment claim against Fairman to proceed.

### b. Harassment

Harassment or hostile work environment claims must allege that plaintiff was subjected to unwelcome "verbal or physical conduct because of [his] race," and "the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Manatt v. Bank of Am.*, 339 F.3d 792, 797 (9th Cir. 2003); *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 978 (9th Cir. 2023). Hostile work environment claims may be raised under § 1981. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

To the extent that Plaintiff is raising a harassment/hostile work environment claim against any Defendant, the claims were not properly pled. *See* Section VII(a). Plaintiff makes no attempt to delineate the claim upon amendment, despite the Court's warning that Plaintiff's counsel was required to list each claim separately. Hostile work environment claims have distinct elements separate from disparate treatment or retaliation, necessitating a separate claim. The Court therefore dismisses any purported harassment as to all Defendants.

Moreover, Vasquez makes no claims that Fairman harassed him personally. Rather, Vasquez believes Fairman should be held accountable for ratifying Dobb's

behavior. (Doc. 48 at 15–16.) Vasquez reasons that § 1981 claims parallel 42 U.S.C. § 1983, which allows supervisors to be held liable for their "own culpable action or inaction in the training, supervision, or control of [their] subordinates." (*Id.* at 16, n.5 (citing *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011)).) In addition, Vasquez asserts that since Title VII and § 1981 apply the same legal principles, Fairman can be held accountable for not preventing Dodd's harassment. (*Id.*)

Fairman disagrees, arguing that failing to respond to Dodd's discriminatory remarks does not render him liable. (Doc. 51 at 5 (first citing *Gebrekidan v. USAA Ins. Co.*, No. C13-0508JLR, 2013 WL 6512995, at *2 (W. D. Wash. Dec. 12. 2013) (stating under § 1981, "negligence does not constitute the personal involvement or affirmative link necessary to support a claim of individual liability") (quotation marks omitted); then citing *Simpson v. Martin*, No. C 96-4590 FMS, 1997 WL 542701, at *4 (N.D. Cal. Aug. 25, 1997) ("A supervisor's failure to prevent or remedy harassment is not an affirmative link making her personally liable."); then citing *Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1048–49 (D. Ariz. 2021) *aff'd*, 2022 WL 474170 (9th Cir. Feb. 16, 2022) (finding a §1981 claim "must . . . be predicated on the actor's personal involvement . . . ").)

The Court agrees with Fairman that the failure to stop Dodd from making disparaging remarks does not show Fairman's intentional involvement in harassment such that he could be held liable. Furthermore, Vasquez's § 1983 cases are not on point—they do not apply the concept of respondeat superior to § 1981 claims against supervisors and do not show a defendant may be liable for a failure to act. The Court will dismiss this claim.

### c. *Retaliation*

Retaliation requires allegations that "(1) [plaintiff] engaged in a protected activity, such as the filing of a complaint alleging racial discrimination, (2) [defendant] subjected [plaintiff] to an adverse employment action, and (3) 'a causal link exists between the protected activity and the adverse action.'" *Manatt*, 339 F.3d at 800 (quoting *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in

protected activity." *Ray*, 217 F.3d at 1243. Causation may be implied by the "proximity in time between the protected action and the allegedly retaliatory employment decision." *Id.* at 1244.

Vasquez's retaliation claim alleges that on July 22, 2021, he filed an Amended Charge of Discrimination against Piper with the EEOC and the Civil Rights Division of the Attorney General's Office ("ACRD"). (Doc. 19 ¶ 60.) Vasquez was terminated on January 26, 2022.[6] (*Id.* ¶ 61.) No actions after the date of the Amended EEOC Charge are attributed to Fairman.

As stated previously, the FAC does not allege Fairman was involved in the decision to terminate Vasquez's employment, and Vasquez cannot hold Fairman accountable for Dodd's discriminatory behavior. Thus, there are no factual allegations suggesting Fairman's involvement in retaliation. The Court will dismiss this claim.

### d.  Conclusion

"[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020) (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009)). "The fact that [plaintiff] failed to correct these deficiencies [upon amendment] is 'a strong indication that the plaintiffs have no additional facts to plead.'" *Zucco Partners*, 552 F.3d at 1007 (quoting *In re Vantive Corp. Secs. Litig.*, 283 F.3d 1079, 1098 (9th Cir. 2002)).

At the pleading stage, Vasquez has stated a viable claim of disparate treatment. But, despite amendment, Vasquez has not linked Fairman's action to the harassment or retaliation claims, and Fairman is not liable for Dodd's actions. Thus, amendment is

---

[6] The original Complaint alleged Vasquez was terminated in March 2022. (Doc. 1 at ¶ 27.) Vasquez explains the inconsistency in the termination date, stating prior to the FAC he found an email "establishing he was terminated on January 26, 2022." (Doc. 48 at 2, n.1 (citing *id.* at Ex. F).) Fairman argues the Court should not permit the inconsistent termination date. (Doc. 42 at 4, n.2.) The Court acknowledges the inconsistency; however, the Court does not rely upon the termination date in dismissing this claim.

futile. Moreover, Plaintiff failed to properly plead harassment as a separate claim. The Court will dismiss the harassment and retaliation claims against Fairman with prejudice.

## V. DEFENDANT DAVIS'S MOTION TO DISMISS

The FAC alleges William Davis was Piper's managing director of operations. (Doc. 19 ¶ 11.) When hired, Vasquez informed Davis that Dodd made racist remarks at his prior job. (*Id.* ¶ 15.) Davis indicated Dodd's behavior would not be tolerated. (*Id.*) Despite this statement, Dodd continued to make discriminatory statements to others, and Davis did not stop him. (*Id.* ¶ 49.)

Like with Fairman, the FAC alleges Davis (1) denied Vasquez administrative staff, (2) excluded him from financial transactions, and (3) took over his accounts. (*Id.* ¶¶ 21, 37–40.) Davis refused to allow Vasquez to work on expanding Piper's business in Phoenix while allowing other employees to do so. (*Id.* ¶¶ 25–26.) Instead, Davis encouraged Vasquez to develop professional relationships with entities within "the southern Arizona municipal bond market." (*Id.* ¶ 30.) Once Vasquez developed these relationships, Davis stole Vasquez's contacts, excluding him from communications, attempting to take over the accounts, and executing deals without his knowledge. (*Id.* ¶¶ 27–28, 31–33.) "Davis . . . did not similarly treat any of Mr. Vasquez's non-Hispanic peers at the firm." (*Id.* ¶¶ 34, 40.)

### a. Disparate Treatment

The disparate treatment claims against Davis must allege (1) Vasquez is part of a protected class; (2) he was qualified for his job; (3) Davis subjected Vasquez to an adverse employment action; and (4) similarly situated individuals outside Vasquez's "protected class were treated more favorably or other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination." *Reynaga*, 847 F.3d at 691.

Again, Vasquez has sufficiently pled the first two elements. Vasquez's response asserts Davis subjected him to adverse employment actions when he (1) terminated Vasquez's employment, (2) failed to provide an administrative assistant, (3) prevented Vasquez from working on deals outside southern Arizona, and (4) poached Vasquez's

clients and hid the subsequent financial transactions. (Doc. 48 at 11, 13, 16.)

As stated before, the FAC does not allege Davis terminated Vasquez. Moreover, Vasquez does not attempt to explain how Davis's other actions "materially affect[ed] the compensation, terms, conditions, or privileges of . . . employment." *Davis*, 520 F.3d at 1089. But, as the Court previously concluded, the denial of an administrative assistant qualifies as an adverse action.

Again, the FAC does not explain how non-Hispanic employees were similarly situated or treated differently. The general reference to Vasquez's non-Hispanic "peers" and "counterparts" is insufficient to meet the pleading requirement to put Defendants on notice of the factual basis supporting the claims against them.

However, there are "other circumstances" that "give rise to an inference of discrimination." *See Reynaga*, 847 F.3d at 691. Davis's tolerance of Dodd's discriminatory remarks in addition to denying an assistant, preventing Vasquez from extending his business into the Phoenix area, excluding him from communications with Vasquez's own contacts, and hiding the resulting financial transactions could suggest a discriminatory motive. Therefore, the Court will allow the disparate treatment claim against Davis to proceed.

### b. Harassment

Vasquez's harassment claim against Davis must allege he was subject to unwelcome racially discriminatory actions that were so severe they "alter[ed] the conditions of [his] employment." *Manatt*, 339 F.3d at 797.

Again, the Court finds this claim was not pled in the FAC.

Moreover, there are no allegations that Davis harassed Vasquez directly. Vasquez's theory of liability relies upon Davis's knowledge of Dodd's discriminatory remarks and his failure to prevent it. (Doc. 48 at 2.) "A supervisor's failure to prevent or remedy harassment is not an affirmative link making [him] personally liable. While employer-entities have the legal duty to prevent and correct harassment and discrimination in the workplace, that duty does not extend to individual employees." *Simpson v. Martin*, No. C 96-4590 FMS, 1997 WL 542701, at *4 (N.D. Cal. Aug. 25,

1997); *Jiles v. City of Pittsburg*, No. C 12-3795 MEJ, 2012 WL 6096580, at *5 (N.D. Cal. Dec. 7, 2012) ("[U]nder Section 1981, supervisors may not be held vicariously liable for actions of other employees.").

Because the addition of facts would not make Davis liable for Dodd's actions, the Court will dismiss this claim without leave to amend.

### c.  Retaliation

For retaliation, Vasquez must plead (1) he "was engaged in a protected activity," (2) Davis "subjected [him] to an adverse employment action," and (3) there was a causal link between (1) and (2). *Manatt*, 339 F.3d at 800.

Davis argues the FAC fails to allege he took any retaliatory action after Vasquez filed a discrimination charge with the EEOC. (Doc. 41 at 15.) Vasquez responds that Davis terminated him. (Doc. 48 at 3.) But, as with Fairman, there are no allegations in the FAC that Davis terminated Vasquez. *See supra* n.3. The Court dismisses this claim.

### d.  Conclusion

For the reasons stated, Vasquez's disparate treatment claim against Davis may proceed and the harassment and retaliation claims are dismissed with prejudice.

## VI.  DEFENDANT DODD'S MOTION TO DISMISS

The FAC alleges Dodd was Piper's managing director of public finance services, and that he made discriminatory remarks about Vasquez to investment bankers and finance professionals at Piper. (Doc. 19 ¶¶ 12–13, 16–20, 54, 56–57.) Dodd's remarks were allegedly intended to "sabotage or steal Mr. Vasquez's deals." (*Id.* ¶ 35.)

Like Fairman and Davis, the FAC claims Dodd cut Vasquez out of team financial transactions, communicated with his contacts behind his back, took control of his accounts, and denied him an administrative assistant. (*Id.* ¶¶ 21, 31, 36.) In addition, Dodd refused to allow Vasquez to work on expanding Piper's business in Phoenix but allowed his peers to do so. (*Id.* ¶¶ 25–26.) Since Vasquez's termination, Dodd "continues to retaliate against Vasquez by bad-mouthing him to other industry professionals . . . ." (*Id.* ¶ 62.) "Dodd did not similarly treat any of Mr. Vasquez's non-Hispanic peers at the firm." (*Id.* ¶ 34.)

Dodd argues that the claims against him should be dismissed because (1) he was not a supervisor and therefore was not responsible for any adverse action—including termination; (2) there are no allegations of but-for causation; and (3) the alleged comments were insufficient to create a hostile work environment. (Doc. 43 at 1–2.)

Vasquez's counters that because Dodd interfered with Vasquez's ability to perform at work, and "Dodd's discriminatory conduct contributed to Vasquez's ultimate termination, Dodd is liable under Section 1981." (Doc. 48 at 13.)

### a.  Disparate Treatment

The disparate treatment claims against Dodd must allege (1) Vasquez is part of a protected class; (2) he was qualified for his job; (3) Dodd subjected Vasquez to an adverse employment action; and (4) similarly situated individuals outside Vasquez's "protected class were treated more favorably or other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination." *Reynaga*, 847 F.3d at 691.

As explained above, the first two elements have been met. Vasquez attributes two adverse actions to Dodd: (1) denying Vasquez an administrative assistant, and (2) Davis and Fairman's decision to terminate Vasquez. (Doc. 48 at 16–17.)

Assuming the allegations are true—as this Court must on a motion to dismiss—the FAC alleges Dodd[7] was a supervisor and refused to provide Vasquez an administrative assistant. (Doc. 19 ¶ 36.) However, like Davis and Fairman, the FAC does not allege Dodd terminated his employment. (*See e.g.*, Doc. 19 ¶ 61.) And while the FAC has not shown other similarly situated individuals were treated differently, Dodd's discriminatory remarks give rise to the inference of discrimination. Because of this, the Court will allow the disparate treatment claim to proceed.

---

[7] The FAC generally states that individual Defendants are "supervisory employees." (Doc. 19 ¶ 1.) The FAC does not explain in what capacity Dodd supervised Vasquez, but states that, like Fairman and Davis, "Dodd also denied Mr. Vasquez the administrative support he needed to efficiently do his job." (Doc. 19 ¶ 36; Doc. 36 at 8, n.1 (stating because he was the managing director "Vasquez was subordinate to Dodd").) The Court assumes—as it must for the purpose of these motions—that Dodd supervised the distribution of assistants. *See Iqbal*, 556 U.S. at 678 (review on motion to dismiss); *see also Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (1989) (review on motion for judgment on the pleadings).

1    ///

2            b.  *Harassment*

3            Plaintiff's harassment claim against Dodd is improperly pled as it was against

4    Fairman and Davis. Dodd argues that since none of his derogatory remarks were made

5    directly to Vasquez, they were not so severe as to alter the terms of his employment and

6    cannot be considered harassment. (Doc. 43 at 1–2.) Vasquez's Response does not address

7    Dodd's argument that the comments did not create a hostile work environment. The FAC

8    alleges that when Vasquez was hired, he reported Dodd's prior discriminatory remarks

9    (Doc. 19 ¶ 15), but no facts suggest these remarks were made directly to Vasquez and he

10   has not explained how any remark to others interfered with his work performance. The

11   Court dismisses this claim.

12           c.  *Retaliation*

13           A retaliation claim must allege (1) engagement in a protected activity, (2) an

14   adverse employment action linked to defendant's action, and (3) a causal connection

15   between the two. *Manatt*, 339 F.3d at 800. In limited circumstances, a subordinate may

16   be liable in retaliation. "[U]nder the 'cat's paw metaphor,' even if the final decision maker

17   lacked retaliatory intent, the plaintiff can establish the causal link by 'proving that [a]

18   biased subordinate influenced or was involved in the decision or decision making

19   process.'" *Norman v. Clark Cnty. Dept. of Juv. J. Services*, 244 F. Supp. 3d 1085, 1092

20   (D. Nev. 2017) (quoting *France v. Johnson*, 795 F.3d 1170, 1176 (9th Cir. 2015), *as

21   amended on reh'g* (Oct. 14, 2015)).

22           There are no facts in the FAC stating Dodd was involved in Vasquez's termination,

23   or explaining how Dodd may have influenced Piper's decision to terminate. (*See e.g.*,

24   Doc. 19 ¶ 61 (stating "*Piper's* discrimination against Mr. Vasquez culminated in *Piper's*

25   retaliatory termination of his employment for complaining of discrimination in the

26   workplace." (emphasis added)).) Here, despite amendment, it is clear Vasquez "made

27   [his] best case" and was "found wanting." *Nguyen*, 962 F.3d at 420.

28           d.  *Conclusion*

             For the reasons stated above, the Court will allow Vasquez's disparate treatment

claim against Dodd to proceed but will dismiss the harassment and retaliation claims with prejudice.

**VII.   DEFENDANT PIPER'S MOTION FOR JUDGMENT ON PLEADINGS (DOC. 23)**

The Court applies the same standard of review to a motion for judgment on the pleadings as it does to a motion to dismiss. *Honchariw v. Cty. of Stanislaus*, 530 F. Supp. 3d 939, 944 (E.D. Cal. 2021) (citing *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (1989)). When considering Piper's Rule 12(c) motion, the Court must take Vasquez's allegations as true, regardless of whether Piper's response is contradictory. *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006). The Court may take judicial notice of certain documents and consider defendant's attachments. 530 F. Supp. 3d 945.

*a.   Failure to Comply with Court's Order*

Piper asks the Court to dismiss this matter because Vasquez failed to list separate counts as ordered by the Court. (Doc. 23 at 1–2.) Vasquez asserts only two counts—disparate treatment and retaliation. (Doc. 19 at 3–10; Doc. 36 at 15.) Insofar as the FAC attempts to raise a harassment/hostile work environment claim, Vasquez *has* failed to follow the Court's order and include it as a separate count. Therefore, the Court finds the harassment claims have not been properly pled and will be dismissed.

*b.   Failure to Exhaust: Racial Discrimination Claim*

In Piper's motion to dismiss the original Complaint, Piper alleged Vasquez failed to exhaust his Title VII discrimination claim as to race because he intentionally unchecked the box marked "race" in his amended EEOC Charge. (Doc. 6 at 1.) The Court found it was premature to determine whether Vasquez had exhausted his administrative remedies because the scope of inquiry on a motion to dismiss was limited. (Doc. 15 at 4.) Based on the pleading, it was unclear what bases of discrimination the EEOC investigated and whether the investigation extended to Vasquez's termination. (*Id.* at 4–5.)

Piper's Motion for Judgment on the Pleadings ("MJOP") again argues that Vasquez has failed to exhaust his Title VII race discrimination claim. (Doc. 23 at 1.)

Piper attached a notice from the Arizona Attorney General's Office, Civil Rights Division ("ACRD Notice") that indicated after filing the Amended EEOC/ACRD Charge, Vasquez's discrimination claim had "been amended to correct the basis to National origin[] and dissolve Race." (Doc. 40 at 3 (quoting Doc. 23-1 at 13).) Vasquez counters that even if that were true, the Court may still consider his racial discrimination claims because they are reasonably related to and consistent with the color and national origin claims—i.e., the actions, perpetrators, and locations are identical. (Doc. 36 at 13–14.)

For Title VII discrimination, the district court can only exercise jurisdiction over claims for which the plaintiff has "exhausted his administrative remedies by filing a timely charge with the EEOC." *Vasquez*, 349 F.3d at 644. "Subject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002) (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)). To determine whether a claim has been exhausted, the Court "may consider 'such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.'" *Id.* The scope of the charge is construed liberally. *Id.*

The July 28, 2021 letter from the ACRD shows that once Vasquez filed his Amended EEOC Charge, no investigation into racial discrimination ensued. (Doc. 23-1 at 13.) Because race was specifically excluded, it could not "reasonably be expected to grow out of the charge of discrimination." *Id.*; *Armijo v. Costco Wholesale Warehouse, Inc.*, No. 19-00484-ACK-RT, 2021 WL 1240622, at *5 (D. Haw. Apr. 2, 2021). Vasquez makes no argument and provides no evidence to the contrary. Thus, Vasquez's Title VII disparate treatment and retaliation claims based on race are unexhausted and precluded.[8]

    *c.  Failure to Exhaust: Termination for Retaliation Claim*

---

[8] This does not preclude Vasquez's racial discrimination claims under § 1981, which do not require exhaustion. *See Morrison v. Jones*, 607 F.2d 1269, 1275 (9th Cir. 1975), *cert. denied*, 455 U.S. 962; *Johnson v. Railway Express Agency*, 421 U.S. 454, 460 (1975).

Piper argues Vasquez failed to exhaust his claim that Piper retaliated against him for complaining about Dodd's discriminatory remarks because Vasquez's termination was not included in his Amended EEOC charge. (Doc. 23 at 4.) The last date of discriminatory action in Vasquez's EEOC charge was July 16, 2021, and Piper claims he never amended the charge to include his termination. (*Id.* at 6.) Because of this, Piper claims Vasquez's termination cannot be considered an adverse employment action for the retaliation claim. (*Id.* at 2.)

Vasquez notes that his Amended EEOC Charge indicated there was ongoing discrimination, which reasonably included the subsequent termination since the termination occurred when the investigation was still open. (Doc. 36 at 14–15.) He argues he did not need to amend or refile a charge to have his termination included in his retaliation claim. (*Id.*)

"Subject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's *actual investigation* or an EEOC investigation which can *reasonably be expected* to grow out of the charge of discrimination.'" *Villa v. Arizona*, No. CV-17-03557-PHX-JAT, 2019 WL 1858138, at * 7 (D. Ariz. Apr. 25, 2019) (quoting *B.K.B.*, 276 F.3d at 1100) (emphasis added).

The Court makes the same conclusion as it did previously:

> With the limited review available to the Court on a motion to dismiss, it is too early to determine the scope of the EEOC's investigation and whether Plaintiff's administrative remedies have been exhausted . . . . Plaintiff was terminated prior to the conclusion of the EEOC investigation and so the Court cannot determine whether the EEOC investigation reviewed Plaintiff's termination. Further evidence may reveal whether EEOC investigation encompassed . . . Plaintiff's termination.

(Doc. 15 at 4–5.) Unlike the race claim, there is no evidence whether the investigation extended to Vasquez's termination. However, termination could reasonably be expected to be included since Vasquez was employed when he filed the EEOC Charge, he checked the box indicating there was ongoing discrimination occurring, and the investigation continued after he was terminated. *Compare Villa,* 2019 WL 1858138, at * 9–11 (dismissing plaintiff's constructive

discharge claim, stating plaintiff needed to file a new EEOC charge where he had not indicated ongoing discrimination and the EEOC completed investigation prior to plaintiff's decision to quit), *compare Ong v. Cleland*, 642 F.2d 316, 320 (9th Cir. 1981) (dismissing on summary judgment where disability retirement claim was not raised or investigated and "did not allege . . . a pattern or practice of discrimination").

Piper may raise this issue upon summary judgment, but the Court declines to find that Plaintiff has not administratively exhausted his retaliation claim as to national origin and color at this juncture.

### d.  Disparate Treatment

"[A]n employer is liable under Title VII and § 1981 when it subjects an employee to disparate treatment." *Reynaga*, 847 F.3d at 690. A disparate treatment claim must allege (1) protected class; (2) qualification; (3) adverse employment action; and (4) similarly situated individuals treated differently from plaintiff or other indications of discriminatory motive. *Id.* at 691.

Vasquez asserts Piper discriminated against him by: (1) not providing an administrative assistant; (2) stealing his clients and hiding the resulting transactions; (3) prohibiting him from working on deals in Phoenix; (4) not providing him with an access card to Piper's office; (5) not displaying his picture or bio on Piper's website; (6) not giving him season tickets to sporting events; and (7) publicly denigrating him. (Doc. 36 at 7–8, 17–18.)

For the same reasons stated with regard to the motions to dismiss, Vasquez has sufficiently pled disparate treatment. Vasquez viably alleges he is part of a protected class, was qualified for his job, and was denied an administrative assistant. Piper's acquiescence in individual Defendants' discriminatory actions are indications of discriminatory motive.

### e.  Retaliation

Employers are prohibited from "discriminating against an employee" in retaliation "for opposing an unlawful employment practice." *Dawson v. Entek Int'l*, 630 F.3d 928,

936 (9th Cir. 2011). A retaliation claim must allege (1) the plaintiff engaged in a protected activity, (2) an adverse employment action linked to defendant's action, and (3) a causal connection between the two. *Manatt*, 339 F.3d at 800.

First, Vasquez's EEOC claim and report of discrimination are protected activities.

Second, Vasquez claims the adverse actions applicable to the disparate treatment claim apply to his retaliation claim.[9] (Doc. 36 at 19.) The Court agrees that, if considered exhausted, Vasquez's termination is an adverse action. *Little v. Windermore*, 301 F.3d 958, 970 (9th Cir. 2002). However, short of the claim that Dodd's comments continued after Vasquez reported them, the alleged adverse actions do not include dates and therefore cannot be connected to retaliation. Furthermore, Dodd's badmouthing alone is not considered an adverse action. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928–929 (9th Cir. 2000). Vasquez's case law in support applies to job references to potential employers, not discriminatory comments to others.

Third, Vasquez claims he has shown temporal proximity between the protected action and his termination, which provides causation. (Doc. 36 at 19.) As previously noted, the FAC states Vasquez was terminated six months after his EEOC Charge, while the original Complaint asserted it was nine months. In addition, Piper provides a third date of termination between the two alleged dates. (Doc. 23 at 5, n.5.) The Court accepts Vasquez's explanation that he discovered the earlier termination date after the initial filing. However, because there remains a factual dispute as to when Vasquez was terminated, the Court will not preclude this claim on a motion to dismiss. This issue may be raised again on summary judgment. For now, Vasquez's allegations are sufficient to provided notice of the retaliation claim against Piper, and he has propounded that the filing of the Amended EEOC claim was the catalyst for his termination, which is sufficient.

### f.   Claims Based on National Origin and Color

---

[9] Piper is correct that Vasquez conflates the definition of an adverse action for discrimination with retaliation claims. (*See* Doc. 36 at 17 (indicating that for disparate treatment, an adverse action is one that "is reasonably likely to deter employees from engaging in protected activity").) Here, the Court applies Vasquez's law and reasoning to the retaliation claim.

Finally, insofar as Defendants claim that Vasquez has not pled facts supporting his national origin or color claims, the Court finds the allegations in the FAC having to do with the discriminatory comments made by Dodd, which allegedly affected the actions of all Defendants, provide Defendants notice of the basis of the national origin and color claims before them.

Accordingly, **IT IS ORDERED**:

1) Defendant William Davis's Motion to Dismiss (Doc. 41) is **GRANTED IN PART AND DENIED IN PART**.

   a. Plaintiff's **§ 1981 disparate treatment** claim against Davis shall proceed.

   b. Plaintiff's **§ 1981 harassment/hostile work environment** claim against Davis is **DISMISSED WITH PREJUDICE**.

   c. Plaintiff's **§ 1981 retaliation** claim against Davis is **DISMISSED WITH PREJUDICE**.

2) Defendant Frank Fairman's Motion to Dismiss (Doc. 42) is **GRANTED IN PART AND DENIED IN PART**.

   a. Plaintiff's **§ 1981 disparate treatment claim** against Fairman shall proceed.

   b. Plaintiff's **§ 1981 harassment/hostile work environment** claim against Fairman is **DISMISSED WITH PREJUDICE**.

   c. Plaintiff's **§ 1981 retaliation** claim against Fairman is **DISMISSED WITH PREJUDICE**.

3) Defendant Nick Dodd's (Doc. 43) Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

   a. Plaintiff's **§ 1981 disparate treatment** claim against Dodd shall proceed.

   b. Plaintiff's **§ 1981 harassment/hostile work environment** claim against Dodd is **DISMISSED WITH PREJUDICE**.

   c. Plaintiff's **§ 1981 retaliation** claim against Dodd is **DISMISSED**

**WITH PREJUDICE**.

4) Defendant Piper Sandler & Company's Motion for Judgment on the Pleadings (Doc. 23) is **GRANTED IN PART AND DENIED IN PART**.

    a. Plaintiff's **Title VII disparate treatment claim based on race** against Piper is **DISMISSED WITH PREJUDICE**.

    b. Plaintiff's **Title VII disparate treatment claim** against Piper **based on national origin and color** may proceed.

    c. Plaintiff's **Title VII retaliation claims based on race** is **DISMISSED WITH PREJUDICE**.

    d. Plaintiff's **Title VII retaliation claims based on national origin and color** against Piper may proceed.

    e. Plaintiff's **§ 1981 disparate treatment claims based on race, national origin, and color** against Piper of may proceed.

    f. Plaintiff's **harassment/hostile work environment** claims against Piper are **DISMISSED WITH PREJUDICE**.

Dated this 30th day of September, 2024.

_____
Honorable Raner C. Collins
Senior United States District Judge